IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER STERN, | ) | CASE NO. 1:10 CV 1961 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | | Magistrate Judge James R. Knepp II |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Report and Recommendation of Magistrate Judge James R. Knepp II (Docket #16), recommending that the Commissioner's final determination denying Plaintiff's claims for Disability Insurance Benefits and Supplemental Security Income be affirmed.

**Factual and Procedural Background**

As set forth by the Magistrate Judge, the factual and procedural history of this case is as follows:

BACKGROUND

*Treatment History*

In November of 1993, Plaintiff (then 14 years old) underwent a vocational evaluation by the Lorain City Schools. (Tr. 95–99). Evaluators placed Plaintiff in the 16th percentile in his general learning ability, and stated he "works well when he is given frequent encouragement. He has a high tolerance for repetitive tasks and he enjoys working with his hands. He would be likely to do well in areas such

as light assembly or food service." (Tr. 97–98). Also that year, psychologist Dr. Thomas Zeck evaluated Plaintiff, and opined Plaintiff fell "within the mild mental retardation range of intelligence classification." (Tr. 179). Plaintiff's Full Scale IQ at the time was 66. (Tr. 179).

In April 1996, Plaintiff was again evaluated by Dr. Zeck (Tr. 193–196), who found Plaintiff's calculation abilities were in the borderline range, his abstract and logical thinking abilities within the low-average range, and his overall intellectual functioning was in the borderline range (Tr. 195). Plaintiff's Full Scale IQ score was 81. (Tr. 195). Dr. Zeck diagnosed Attention Deficit Hyperactivity Disorder ("ADHD") and borderline intellectual functioning. (Tr. 196).

Dr. Zeck evaluated Plaintiff again in June 1997 (Tr. 219–225), finding Plaintiff's calculation abilities within the "mental defective" range (Tr. 221), his abstract and logical thinking were within the average range, and his overall intellectual functioning was determined to be within the borderline range. (Tr. 222). Plaintiff's Full Scale IQ score was 73. (Tr. 222). Dr. Zeck diagnosed cannabis abuse, borderline intellectual functioning, and educational problems. (Tr. 225).

In July 1997, psychologist Dr. Caroline Lewin reviewed Plaintiff's records (Tr. 226–239), noting Plaintiff had a Full Scale IQ of 73 (Tr. 231). Dr. Lewin determined Plaintiff was moderately limited in his ability to (1) understand, remember and carry out detailed instructions; (2) to maintain attention and concentration for extended periods of time; (3) to maintain regular, punctual
attendance; and (4) to complete a normal workday/workweek without being interrupted by psychologically based symptoms. (Tr. 236). Dr. Lewin did not find any other significant limitations (Tr. 236–237), and concluded Plaintiff "can do simple tasks" (Tr. 238).

In May 2000, psychologist Dr. Mitchell Wax examined Plaintiff, whom he believed was "making up information as he went along" and malingering. (Tr. 241, 243–244). For example, Dr. Wax noted Plaintiff initially said that he could not read, "but later it was learned he had no trouble reading the sports page of the newspaper". (Tr. 241). Dr. Wax reported that during testing, Plaintiff "could not answer simple math questions, but later in the evaluation he was easily able to count by 3s and could do similar math problems when words were changed." (Tr. 241). Dr. Wax further stated Plaintiff "said he has no income, but later it was learned he often goes out to dinner, goes to bars, and plays pool with friends." (Tr. 241). Although Plaintiff obtained a Full Scale IQ score of 58, Dr. Wax invalidated the score due to malingering and noted, in reality, Plaintiff's "functioning appeared to be much higher". (Tr. 243). He found Plaintiff was "not

-2-

restricted in his daily activities" (Tr. 244) and refrained from diagnosing any impairment due to Plaintiff's perceived malingering. (Tr. 245).

In December 2001, psychologist Dr. Ronald G. Smith evaluated Plaintiff. (Tr. 256–266). Plaintiff reported he lived alone, had worked a variety of short-terms jobs since leaving school, and enjoyed reading books and newspapers (Tr. 256–257), despite reading at the 4.2 grade level (Tr. 261). Plaintiff said he spent his days drinking beer, smoking marijuana, and watching TV with his friends or girlfriend. (Tr. 258). Dr. Smith found Plaintiff had marked limitations in his ability to carry out detailed instructions and make work-related judgments (Tr. 265), and had moderate limitations in his ability to understand and remember detailed instructions and in his ability to appropriately respond to work pressures and changes (Tr. 266). Dr. Smith reported Plaintiff's ability to maintain concentration and attention "appeared to be poor," though "he would seem to be able to successfully follow simple one or two step job instructions". (Tr. 263). Plaintiff obtained a Full Scale IQ score of 69. (Tr. 259). Dr. Smith diagnosed ADHD, alcohol and cannabis abuse, and borderline intellectual functioning. (Tr. 263).

In February 2008, Plaintiff underwent another evaluation by Dr. Smith. (Tr. 383–387). Plaintiff reported he was then working as a kitchen helper. (Tr. 384). Dr. Smith found Plaintiff's speech was clear, he seemed well organized in his thinking, and his insight and judgment appeared to be fair. (Tr. 385). Dr. Smith noted a 2007 IQ score of 73. (Tr. 386). He found Plaintiff was moderately or severely impaired in his ability to understand, remember and carry out complex tasks, and might need some assistance in handling funds due to limited arithmetic ability (Tr. 387), but Plaintiff was not impaired in his ability to relate to others in a work setting, to understand, remember and follow simple instructions, to maintain attention, concentration, and persistence (provided he is performing the kinds of tasks he is capable of), or to withstand the stress and pressures of day-today
work (Tr. 387). Dr. Smith diagnosed borderline intellectual functioning. (Tr. 386).

In March 2008, state agency psychologist Dr. Karen Terry reviewed Plaintiff's medical record to assess Plaintiff's limitations. (Tr. 390, 392–441). In summary of her various assessments, she noted Full Scale IQ scores of 66, 73, and 81, and commented that a May 2000 IQ score of 58 was considered invalid because of malingering. (Tr. 422). She reported no episodes of decompensation, although she also noted Plaintiff had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (Tr. 402). Dr. Terry pointed out Plaintiff stated he "performs self-care activities, cooks for himself, cleans, does laundry, visits with friends, plays games, watches TV, eats out, plays pool with his friend, sometimes goes to Lake Erie, goes grocery shopping with his mother, and can shop independently at a local store". (Tr. 440).

-3-

In one assessment, Dr. Terry adopted Administrative Law Judge ("ALJ") Cheryl M. Rini's September 2002 determination finding Plaintiff retained the capacity for simple, routine, repetitive, low stress work. (Tr. 275, 390) (Plaintiff was denied disability benefits in September 2002 (Tr. 270–75)). Similarly, she also found Plaintiff retained the ability to perform work that does not require strict production quotas and is performed in low stress settings, does not require frequent change, and involves only minimal and superficial contact with others. (Tr. 440). She also found that instructions should be presented visually to Plaintiff because of his low reading level. (Tr. 440).

*Administrative Hearing*

In January 2009, Plaintiff, represented by counsel, testified before an ALJ. (Tr. 470–509). Plaintiff testified that since 2002, he had held a variety of jobs, including work at a neighborhood housing project, Kentucky Fried Chicken, Elyria Plastics, and McDonald's, but generally those jobs lasted only a few months. (Tr. 475–82). Plaintiff testified he had been let go from or quit his jobs because he could not keep up with the pace. (Tr. 489). Plaintiff held his job at McDonald's the longest, two or three years, before being let go for "goofing off" and not following the company's beard grooming policy. (Tr. 476–77). Plaintiff noted he had trouble keeping up when the restaurant was busy. (Tr. 477–81).

When questioned by the ALJ, Plaintiff said he felt he could read and write fairly well, could write letters, and could read a whole newspaper, although he sometimes needed help reading "big" words. (Tr. 486). Plaintiff admitted he had trouble with arithmetic, but stated he could add, subtract, and divide fairly well, and could use a cash register. (Tr. 486–87).

Plaintiff testified he lived alone in a rent-subsidized apartment, where he was required to do community service in exchange for not paying rent. (Tr. 490–91). As part of his community service, Plaintiff, under the supervision of another, monitored people entering and leaving the apartment complex. (Tr. 491–92). Plaintiff was responsible for, and did in fact, maintain the cleanliness of his apartment. Plaintiff said he also cooks for himself, although his girlfriend or mother occasionally make meals for him. (Tr. 493–94). Plaintiff testified that during the day he plays video games, talks on the telephone, looks for jobs, watches television, reads the newspaper, hangs out with friends, uses a computer, and visited his apartment complex's recreational room. (Tr. 493–95, 497). Plaintiff also occasionally watches his children, and together they watch television, go to the park, go out to eat, or visit the library. (Tr. 496). Plaintiff also reads books to his children. (Tr. 496).

Vocational expert ("VE") Thomas Nimberger also testified. The ALJ asked the VE to assume a person of Plaintiff's age and education, with no past

-4-

relevant work, who can perform a full range of exertional work, but limited to understanding, remembering, and carrying out simple instructions and performing repetitive tasks without strict time demands or quotas. (Tr. 498–99).

The VE testified there were several jobs in the Dictionary of Occupational Titles ("DOT") a hypothetical person with these limitations could perform: a watch guard, a packager, a janitor, a material handler, and a cafeteria attendant. (Tr. 499–500). The VE also testified there were hundreds of thousands of material handler, janitor, and cafeteria attendant jobs existing in the national economy, and thousands of each job in northeast Ohio. (Tr. 500–01).

*The ALJ's Decision*

In 2009, the ALJ issued his decision. (Tr. 18–25). The ALJ found Plaintiff cleared the first four hurdles in the five-step analysis, but the Commissioner satisfied his burden at the last step. The ALJ found Plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: understanding, remembering and carrying out simple instructions and performing repetitive tasks with no strict time demands or quotas such as assembly line production work." (Tr. 22). The ALJ also found there were a sufficient number of material handler, industrial janitor, and cafeteria attendant jobs in the national and regional economies Plaintiff could perform. (Tr. 24–25). Accordingly, the ALJ found Plaintiff not disabled. Plaintiff initiated this action after the Appeals Council denied his request for review. (Tr. 9; Doc. 12, at 2).

**Report and Recommendation.**

On November 23, 2011, the Magistrate Judge issued his Report and Recommendation. (Docket #16.)  The Magistrate Judge found the ALJ's decision to be supported by substantial evidence.  Objections to the Magistrate Judge's Report and Recommendation were to be filed withing 14 days.  On December 12, 2011, Mr. Stern filed Objections to the Report and Recommendation.  (Docket #17.)  On December 27, 2011, the Commissioner filed a Response to Plaintiff's Objections, stating that because Mr. Stern's objections were very similar to the arguments made in his Brief before the Magistrate Judge, the Commissioner would rest on his previous Brief.  (Docket #18.)

**Standard of Review for a Magistrate Judge's Report and Recommendation**

The applicable district court standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to the report.  When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case *de novo*.  FED. R. CIV. P. 72(b) provides:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

The standard of review for a magistrate judge's report and recommendation is distinct from the standard of review for the Commissioner of Social Security's decision regarding benefits.  Judicial review of the Commissioner's decision, as reflected in the decisions of the ALJ, is limited to whether the decision is supported by substantial evidence.  *See Smith v. Secretary of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989).  "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."  *Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citation omitted).

**Conclusion**

Despite the fact that the Plaintiff's Objections to the Magistrate Judge's Report and Recommendation were filed beyond the 14-day period for filing Objections, this Court has reviewed the Magistrate Judge's Report and Recommendation *de novo* and has considered all of the pleadings, transcripts, and filings of the parties, as well as the Objections to the Report and Recommendation filed by Mr. Stern.  After careful evaluation of the record, this Court adopts the findings of fact and conclusions of law of the Magistrate Judge as its own.

Magistrate Judge Knepp thoroughly and exhaustively reviewed this case, and properly found the ALJ's decision denying benefits to be supported by substantial evidence. The ALJ's finding that Mr. Stern could perform a restricted range of simple, repetitive work was well-supported by the evidence presented and the ALJ sufficiently explained and supported the basis for his determination. Accordingly, the Report and Recommendation of Magistrate Judge Knepp (Document # 16) is hereby ADOPTED. The Commissioner's final determination denying Mr. Stern's claims for Disability Insurance Benefits and Supplemental Security Income is hereby AFFIRMED.

This case is hereby TERMINATED.

IT IS SO ORDERED.

s/Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: December 27, 2011